IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) 1:12cr215 (LMB) |
| DANIEL CHARLES WILLIAMS, | ) 1:14cv577 (LMB) |
| a/k/a Foo | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Daniel Charles Williams ("Williams" or "movant") has filed a Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody ("Motion to

Vacate") in which he alleges that his Criminal Justice Act attorney, Dontae LaMont Bugg

("Bugg" or "counsel"),[1] provided him with ineffective assistance in multiple respects and that his

guilty plea was involuntary, and therefore, void.

Specifically, in Ground One he alleges that Bugg was ineffective by misleading him

about the sentence he faced if he accepted the plea offer and by failing to investigate the facts

and prepare a defense thereby forcing movant to "take a plea deal." Mot. 28 U.S.C. § 2255

Vacate, Set Aside, or Correct Sentence ("Mot. to Vacate") 5. He also claims that counsel did not

object to "enhancements, search [sic], or warrants" and did not file motions to suppress,

"particularly from the Search [sic] and GPS tracking device." Id. In Ground Two he appears to

attack the voluntariness of his guilty plea by arguing that he entered the plea on his attorney's

promise that he would receive an 87-month sentence and was never made aware of the statutory

ten-year mandatory minimum sentence he faced. Id. at 6. In Ground Three, he alleges that

---

[1] Williams initially retained Jonathan Simms, Esquire; however, Simms was required to
withdraw as counsel because of a conflict and was replaced by Bugg.

although he asked Bugg to file an appeal, which his counsel promised to file, no appeal was filed. Id. at 8. Lastly, in Ground Four he attacks the legality of the alleged warrantless use of a GPS tracking device, the warrantless stop and search of his car, and the lack of adequate probable cause for the car search, which he claims was "based on the word of an unproven informant." Id. at 9. For these reasons, he argues in Ground Four that all evidence obtained from these allegedly illegal activities should have been suppressed. Id.

The government has filed a Response To Defendant's Motion To Vacate Under 28 U.S.C. § 2255 ("Response") to which it attached an affidavit from Bugg and a copy of the warrant and supporting affidavit for the tracking device. Movant was given 30 days to file any reply, but did not file one.

## I. BACKGROUND

In August 2011, an individual who had been arrested in Loudoun County, Virginia on state drug charges, began to cooperate with law enforcement. Resp. Def.'s Mot. to Vacate ("Gov't Resp.") Ex. 2, Aff. Sup. Install. and Monitor. Tracking Device ¶¶ 9-10. Identified as C1-1, this person identified Williams as a kilogram level cocaine trafficker, explaining that Williams regularly travelled to the New York City - New Jersey area to obtain cocaine. Id. ¶ 10. After making several controlled buys from Williams through Williams's co-conspirators, on November 2, 2011, C1-1 succeeded in introducing an undercover officer to Williams, from whom the officer made a two-gram purchase of cocaine. Id. ¶¶ 11-13. Further investigation developed a second cooperating source, C1-2, whose information corroborated the information of C1-1 as to Williams's drug dealing. Id. ¶¶ 14-15.

On February 15, 2012, court orders were issued pursuant to 18 U.S.C. §§ 2703(c)(1)(A), 2703(d), and 3122(a)(1) authorizing disclosure of location-based services, installation of a pen register and a trap and trace device, and disclosure of telecommunication records for a cellular phone identified by the cooperators as the one used by Williams. Id. ¶ 16. On March 16, 2012, a

2

search warrant and order authorizing disclosure of location-based services was issued.  Id.

Using these authorized surveillance methods, agents tracked Williams's vehicle travelling to New Jersey for short trips on February 18-19, 2012, id., March 22-23, 2012, id. ¶ 21, and March 29, 2012, id. ¶ 22.  To improve their ability to surveil Williams, on April 5, 2012, agents applied for and received an order authorizing the installation and monitoring of a tracking device which was installed on Williams's blue Honda Civic.  Gov't Resp. Ex. 2, Tracking Warrant.

On April 17, 2012, the tracking device showed the blue Honda travelling south on Interstate 95 in New Jersey.  Aff. Supp. Crim. Compl. and Arrest Warrant ¶ 17.  The car was stopped in Maryland, and after a narcotics detection dog alert on the car, a search uncovered 1,200 grams of cocaine under the front passenger seat.  Id.  After being advised of his Miranda rights, Williams admitted that he drove to New Jersey on April 15 and met with his cocaine supplier in Newark the following day to obtain the 1,200 grams of cocaine, for which he paid $40,000.00.  Id.  He also admitted making similar trips in the past and selling cocaine in "8 ball" (3.5 gram) quantities to customers in the Loudoun County, Virginia, area.  Id.

Williams was arrested and charged with conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1).  On July 20, 2012, after he had been indicted on the conspiracy charge, Williams entered a guilty plea to the conspiracy.  Under the terms of his plea agreement, the government agreed not to file an information under 21 U.S.C. § 851, which would have increased the mandatory minimum sentence to 20 years imprisonment.  Plea Agmt. ¶ 10.  Williams was sentenced on October 15, 2012 to the statutory mandatory minimum sentence of 120 months incarceration followed by five years of supervised release, among other sanctions.  On March 19, 2013, Williams filed a pro se motion for leave to file an appeal out of time.  That appeal was summarily dismissed.  See Order, United States v. Williams, No. 13-4225 (4th Cir. Dec. 19, 2013).  On May 15, 2014, Williams filed this Motion to Vacate.

## II. DISCUSSION

### A. **Standard of Review**

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived by a failure to appeal are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994) (applying the Frady cause and prejudice standard to unappealed guilty pleas). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral attack on his conviction of sentence. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998); United States v. DeFusco, 949 F.2d 114, 120-121 (4th Cir. 1991).

### B. **Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, Williams must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and prejudice to the defendant resulting from that deficient

4

performance. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." Id. at 689. Moreover, Williams must make an additional showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also id. ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). In this context, where Williams pleaded guilty to the offense charged, that means "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

### C. Counsel's Alleged Ineffective Assistance

In Ground One, Williams alleges that his counsel was ineffective in four respects. First, he claims counsel "misled" him as to the possible sentence he faced with his guilty plea. Mot. to Vacate 5. In his affidavit attached to his Motion to Vacate, Williams states, "Mr. Bugg informed me that I either go to trial or enter a plea bargain and receive 87 months . . . . What prompted me to plead guilty was the promise of a sentence of 87 months." Williams Aff.

Regardless of what his counsel may have said concerning the possible sentence, in the Rule 11 plea colloquy Williams acknowledged understanding that no matter what his attorney may have said as to a possible sentence, no such statements were binding on the Court and that Williams could not withdraw his plea if the sentence were different from what he was expecting based on any statement by his counsel.

> THE COURT: Now, I'm going to assume that you've talked with Mr. Bugg a great deal about the final punishment or sentence you might get in this case. Have you done that?

> THE DEFENDANT: Yes.

5

. . .

THE COURT:  Has he given you some estimates as to what kind of a final sentence he thinks you might get in this case?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that no matter what Mr. Bugg may have told you or for that matter if Ms. Ericksen, the prosecutor, or any of the case agents have given you their ideas about what punishment you might get in this case, none of those discussions in any way limit or bind the Probation Office that prepares the pre-sentence report or this Court when it goes to sentence you?
Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And so if at the sentencing hearing the Court imposes a sentence that is different from what you might be expecting or hoping for, that does not violate the plea agreement, and it will not give you a basis to withdraw your guilty plea.  Do you understand that?

THE DEFENDANT:  Yes.

Tr. Plea Hr'g 13-14.

Inaccurate predictions by counsel as to the final sentence seldom amount to ineffective assistance.  See, e.g., United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995) (rejecting ineffective assistance claim where defendant was sentenced as "career offender" although he entered his guilty plea on counsel's assurance that he would not be subjected to a sentence as a career offender); United States v. Lambey, 974 F.2d 1389, 1392, 1395-96 (4th Cir. 1992) (finding that counsel's assurance that defendant's guideline range was 78-108 months was not a basis for a successful ineffective assistance claim when defendant was sentenced to 360 months incarceration).

Moreover, given the very beneficial concession Williams received in this plea bargain when the government agreed not to file the § 851 information, thereby enabling him to avoid a 20-year mandatory minimum sentence, there is persuasive evidence in this record that the real

6

incentive for entering the plea was not counsel's alleged promise of an 87 month sentence, but rather the avoidance of a 20-year sentence.  For these reasons, this claim fails.

In his second ineffective assistance claim, Williams alleges that his counsel did not investigate or prepare a defense strategy, thereby forcing him to have to enter a guilty plea.  Mot. to Vacate 5.  Specifically, he claims in his affidavit that counsel "would not answer any questions or let me even see the contents of the pages of the discovery.  I did not understand this and I was asking him how can I know what type of defense to prepare without him letting me know what was in the discovery that concerned my alleged actions."  Williams Aff.

That claim is directly rebutted by Bugg's affidavit, attached to the government's Response, in which he states that he "devoted significant time to communicating with the defendant."  Gov't Resp. Ex. 1 ("Bug Aff.") ¶ 7.  According to Bugg, "[a]pproximately 13 hours were spent discussing potential legal defenses" and "the strength of the evidence against [Williams]," among other things.  Id.  Bugg also described meeting with Williams on July 1 and July 6, 2012, to review the discovery, which "included copies of the (1) Application for a Tracking Warrant, (2) Supporting Affidavit, and (3) Tracking Warrant permitting the GPS tracking of the defendant's car," with him.  Id. ¶ 8.  Bugg further avers that "The defendant did not instruct me to attempt to challenge the legality of the GPS tracking of his car."  Id.  When he met with Williams on July 12, 2012, they reviewed additional discovery.  Id. ¶ 10.

This claim is also directly contradicted by Williams's admissions during the Rule 11 colloquy, in which he acknowledged that counsel had been fully responsive to his questions, had obtained discovery and shared it with him, and he admitted being fully satisfied with his counsel's performance.

> THE COURT: . . . Now have you asked Mr. Bugg all the questions that you have about this plea agreement?
>
> THE DEFENDANT:  Yes.

> THE COURT:  Has he answered all your questions to your satisfaction?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Are there any questions you want to ask me about the plea agreement?
>
> THE DEFENDANT:  No.

Tr. Plea Hr'g 6-7.

Later in the Rule 11 colloquy, the Court asked:

> THE COURT:  . . .  Now, have you had enough time to tell Mr. Bugg everything you know about this case?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Has he discussed the nature of this conspiracy charge and any ways in which you could possibly defend yourself against the charge?
>
> THE DEFENDANT:  Yes.
>
> THE COURT: . . . And, Mr. Bugg, have you had discovery in this case?
>
> MR. BUGG:  Yes, we have, Your Honor.
>
> THE COURT:  And what kind of discovery have you gotten?
>
> MR. BUGG:  Police statements as well as statements made by my client.
>
> THE COURT:  All right.  Have you shown that discovery to your client or at least discussed it with him?
>
> MR. BUGG:  Shown and discussed, Your Honor.
>
> THE COURT:  All right.  And, Mr. Williams, are you fully satisfied with the way Mr. Bugg has been representing you in this case?
>
> THE DEFENDANT:  Yes.

Id. at 19-20.

Statements during a Rule 11 plea colloquy made under an affirmation to tell the truth,

which acknowledge satisfaction with counsel, are binding on the movant unless there is "clear and convincing evidence to the contrary." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (1992) (citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)).  Given the record discussed above, there is no clear and convincing evidence to support Williams's claim that his counsel either failed to investigate the case, failed to obtain and share discovery with him, or failed to properly consult with Williams about possible defenses.  Therefore, this claim fails.

In his third and fourth ineffective assistance of counsel claims, Williams alleges that his counsel failed to object to enhancements, searches, or warrants, thereby making those topics unavailable for appeal, and did not file motions to suppress the search and GPS tracking device. Mot. to Vacate 5.  In his affidavit, Williams states that he asked counsel "about the stop of my vehicle and the GPS tracking device that was placed on my vehicle and he said that I had no grounds for argument there and that he would not be moving to suppress any evidence on that ground."  Williams Aff.

In his affidavit, Bugg avers that among the evidence he reviewed with Williams were the application, affidavit, and warrant for the GPS tracking device and that Williams did not instruct him to challenge the legality of the GPS tracking installation.  Bugg Aff. ¶ 8.  Even if counsel had moved to suppress either the installation of the tracking device or the stop of Williams's car, the affidavit supporting the authorization of the tracking installation and the facts known to the agents established abundant probable cause to believe Williams was routinely driving to the New Jersey area to purchase cocaine.  It was, therefore, a prudent tactical decision for counsel not to have wasted his or the Court's time filing a suppression motion doomed to fail.  Therefore, the performance prong of the Strickland test has not been met.  Even if it were, to establish the second or prejudice prong of the Strickland test, Williams must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Given that the affidavit for the tracking devices

documented incriminating evidence from two different informants, and was further corroborated by location data and a hand-to-hand buy from Williams by an undercover officer, there was no possibility of the evidence being suppressed. For these reasons Williams's third and fourth claims of ineffective assistance of counsel fail.

### D. Voluntariness of the Guilty Plea

In his second ground Williams alleges that his guilty plea was defective because it was not knowingly and voluntarily entered. Mot. to Vacate 6. He supports that claim solely by repeating his previous argument that his counsel promised him an 87-month sentence and he claims that he "was never made aware of the 10 year mandatory minimum." Id.

As the previous discussion shows, these claims are directly contradicted by the record. Williams, who was 44 years old and had completed the twelfth grade, admitted during his Rule 11 colloquy that he had read the written plea agreement, eight days before the hearing. The agreement clearly set out the ten-year mandatory minimum sentence he faced.[2] Tr. Plea Hr'g 4-8. Moreover, at two different times during the plea colloquy the Court explained that the conspiracy to which Williams was pleading guilty carried a mandatory minimum sentence of ten years imprisonment. Id. at 9 and 16.[3] Williams also admitted that no one had promised him

---

[2]  Paragraph 1 of the Plea Agreement provided in part that "The maximum penalties for this offense are: a mandatory minimum term of imprisonment of ten years, a maximum term of life imprisonment, a fine of $10,000,000.00, full restitution, a $100.00 special assessment, and at least five years of supervised release."

[3] Specifically, the Court asked the defendant
> "Do you understand that the offense carries a mandatory minimum of ten years of imprisonment, which means the court cannot sentence you to less than ten years and could sentence you to as much as life imprisonment because that's the maximum. Do you understand that?

> The Defendant: Yes." Tr. Plea Hr'g 9.

And later, when explaining the benefit of a § 851 information not being filed, the Court

anything to plead guilty and that no one had forced or pressured him into pleading guilty. See id. at 24.

Lastly, that a plea is favorable to a defendant supports the conclusion that accepting the plea was a "reasonable and prudent decision," which is strong evidence that the plea was voluntary and knowing. Fields, 956 F.2d at 1299. Being able to avoid a 20-year mandatory minimum sentence certainly made this a favorable plea. For these reasons, Williams's attack on the validity of his guilty plea fails.

### E.  The Tracking Device

In his Fourth Ground Williams alleges that the evidence against him should have been suppressed because it was illegally seized. Mot. to Vacate 9. Specifically, he claims the GPS tracking device was placed on his car without a warrant. Id. That claim is meritless. As the United States established, there was, in fact, a warrant that authorized the installation and use of that device. See Gov't Resp. Ex. 2, Tracking Warrant. Moreover, the affidavit supporting that warrant contained more than enough probable cause for issuance of the warrant. The evidence in that affidavit also shows that agents had enough probable cause to stop Williams's car and that the K-9 alert gave police sufficient basis to search the car.

Moreover, any complaint about the way in which evidence was seized was waived by Williams during his plea. As the Court explained to him, by pleading guilty he was giving up defenses involving how evidence was obtained.

THE COURT:  Now, if you continued with a not guilty plea, Mr. Bugg

---

told Williams
"... If the government did file that 851 information, which basically would state that you've been convicted previously of a drug felony, if that were filed, that would automatically increase the mandatory minimum from 10 to 20 years in prison.
Do you understand that?

THE DEFENDANT: Yes." Id. at 16.

could try to attack the prosecution's case, and there may or may not be any issues that he could successfully raise. For example, I understand that you gave a confession or statements to the agents. There may or may not be a basis to move to suppress those statements if, for example, you weren't given proper <u>Miranda</u> warnings or you were under the influence of drugs or there's some other issue like that.

I have no idea of what, if any, defenses you might have, but what you need to understand is that by pleading guilty, you're giving them up. Do you understand that?

THE DEFENDANT: Yes.

Tr. Plea Hr'g 23.

For these reasons, the claims in Ground Four fail.

**F.  Failure to Appeal**

In his Third Ground Williams alleges that he asked his counsel "to file an appeal based on several points, GPS and evidence obtained, and was assured by my attorney the appeal would be filed"; however, no appeal was filed. Mot. to Vacate 8. In his affidavit Williams goes on to aver, "When I did get sentenced, I was sentenced to 120 months instead. I asked Mr. Bugg about this and he informed me not to worry because he would be appealing the case." Williams Aff.

When a defendant unambiguously asks his attorney to file an appeal, counsel is <u>per se</u> ineffective if he fails to file the appeal, even if there are no meritorious issues to raise. <u>See</u> <u>United States v. Poindexter</u>, 492 F.3d 263, 265 (4th Cir. 2007). In his affidavit, Bugg categorically denies that Williams asked him to file an appeal. "After the sentencing hearing, the defendant never instructed me to file a notice of appeal." Bugg Aff. ¶ 13.

Although the conflicting averments in Williams's and Bugg's affidavits might appear to create a credibility issue requiring an evidentiary hearing, in this case no such hearing is needed because Williams's credibility is so completely impeached by the multiple misrepresentations he makes in his Motion to Vacate regarding the record, as well as his blatant contradictions of statements made under the penalty of perjury during his plea colloquy. Among the blatant

misrepresentations are claims that he was unaware that he faced a mandatory minimum sentence of ten years, when that sentence was described on the first page of the written Plea Agreement, which he signed, and acknowledged during the plea colloquy as being fully reviewed and understood.  Moreover, during that colloquy he was twice informed about the mandatory minimum sentence he faced.  He also averred that his counsel failed to share discovery and did not discuss the case with him, when at multiple points during his plea colloquy he admitted that counsel had answered all his questions and shown him the discovery, and he acknowledged being "fully satisfied" with counsel's performance.

Given Williams's lack of credibility, the averments of defense counsel, who serves on the court's Criminal Justice Act roster, are so much more credible, they render an evidentiary hearing a complete waste of judicial resources.  Just as a civil litigant cannot avoid summary judgment by merely alleging a factual dispute, so should a person convicted on his own guilty plea not be able to trigger an evidentiary hearing merely on an uncorroborated claim that he asked his attorney to file an appeal.  This conclusion is even more compelling in a case such as this one where the movant is neither claiming nor even suggesting that he is actually innocent of the crime to which he pleaded guilty.

### III. CONCLUSION

Because the Court finds no merit in any of the claims raised in this Motion to Vacate, the motion will be dismissed with prejudice by an Order to be issued with this Memorandum Opinion.

Entered this _7_ day of November, 2014.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

13